[Cite as *Leonhardt v. Akron*, 2019-Ohio-5223.]

| | | |
|---|---|---|
| STATE OF OHIO | )<br>)ss: | IN THE COURT OF APPEALS<br>NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DALE LEONHARDT

    Appellant

    v.

THE CITY OF AKRON, et al.

    Appellees

C.A. No.    29049

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2016-12-5090

DECISION AND JOURNAL ENTRY

Dated: December 18, 2019

TEODOSIO, Presiding Judge.

{¶1} Dr. Dale Leonhardt appeals the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of the City of Akron and Akron Police Department Officers Ryan Smith, Jason Sams, Timothy Hunt, and Samnang Nan. We affirm in part, and reverse and remand in part.

I.

{¶2} On December 5, 2015, Officer Ryan Smith and Officer Jason Sams effected a traffic stop of Dr. Leonhardt after observing him make a right turn through a red light without stopping his vehicle. After the officers activated their police cruiser's lights and siren, Dr. Leonhardt turned his vehicle on to a side street and into a bank parking lot, with Officer Smith following and parking the cruiser perpendicular to Dr. Leonhardt's vehicle. Despite the police cruiser's in-car video system ("IVS") being activated, the camera was not turned toward Dr.

Leonhardt's vehicle, and consequently there is no video of the officer's interactions with Dr. Leonhardt. There is, however, an audio recording.

{¶3} Although some of the facts of what occurred next are in dispute, the events of the traffic stop generally unfolded as follows. According to Officers Smith and Sams, after Dr. Leonhardt parked his vehicle, he opened his door and exited his vehicle. At that point, the officers drew and pointed their firearms at Dr. Leonhardt and ordered him to return to his vehicle. Dr. Leonhardt yelled out that he was hearing impaired and that he thought they had told him to get out of his car. After Dr. Leonhardt sat back down in the driver's seat, Officer Sams approached the vehicle and asked for Dr. Leonhardt's driver's license and insurance information. Dr. Leonhardt provided his driver's license but continued to search for his insurance information. Dr. Leonhardt was upset that the officers had drawn their weapons on him, and the exchange between Dr. Leonhardt and the officers soon escalated into name-calling, with Dr. Leonhardt became increasingly agitated as the encounter went on. The officers told him to remain in his vehicle and close his door while they returned to the cruiser. Dr. Leonhardt told the officers he wanted his car door to remain open.

{¶4} At that point, the audio recording indicates that the officers told Dr. Leonhardt to get out of the car and began to forcibly remove him. In the process of removing Dr. Leonhardt from his vehicle, all three fell to the ground, with the officers attempting to restrain Dr. Leonhardt while he was face-down on the pavement. Officer Sams testified that with his left knee on the area of Dr. Leonhardt's shoulder blade, he pinned his right arm to the ground. Officer Smith delivered several knee strikes to Dr. Leonhardt's body and applied pepper spray to Dr. Leonhardt's face. Officer Sams stated that he was able to place handcuffs around one of Dr. Leonhardt's wrists, and that after Officers Hunt and Nan arrived on the scene, they ran over to

help complete the handcuffing and arrest. The Akron Fire Department EMS arrived soon thereafter, and Dr. Leonhardt was transported to a hospital for treatment.

{¶5} Dr. Leonhardt was subsequently charged with assault, obstructing official business, and resisting arrest. An indictment was filed on December 22, 2015, and on February 5, 2016, the State of Ohio motioned the trial court to dismiss the indictment without prejudice, with the trial court dismissing the case on February 18, 2016.

{¶6} In December 2016, Dr. Leonhardt filed a complaint against the City of Akron and Officers Smith, Sams, Hunt and Nan, stating claims for assault and battery, negligence, false arrest, excessive force in violation of 42 U.S.C. 1983, malicious prosecution, intentional infliction of emotional distress, and respondeat superior. Dr. Leonhardt alleged injuries that included a fractured elbow, a torn ligament, bruising and abrasions, headaches, dizziness, anxiety, and nightmares.

{¶7} Upon the defendants' motion, the trial court granted summary judgment in favor of the defendants and dismissed Dr. Leonhardt's complaint on April 27, 2018. Dr. Leonhardt now appeals, raising twelve assignments of error, which have been reordered for the purposes of our analysis.

II.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BY MEANS OF ITS APRIL 27, 2018, ORDER THEREBY DISMISSING PLAINTIFF'S CLAIMS AGAINST ALL DEFENDANTS WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED.

ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED DETERMINING THE INDIVIDUAL APPELLEES WERE ENTITLED TO STATUTORY IMMUNITY UNDER R.C. 2744 ET SEQ.

{¶8} In his second assignment of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants because genuine issues of material fact existed. He contends that his testimony, coupled with the audio and video, directly contradicts the officers' version of the events surrounding the traffic stop and arrest, thereby creating a factual dispute which would render summary judgment inappropriate. In his fourth assignment of error, Dr. Leonhardt argues the trial court erred in finding the defendants were entitled to statutory immunity.

{¶9} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps– Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶10} The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶11} We note at the outset that Dr. Leonhardt's second assignment of error, in isolation, does not specify which, if any, of his claims are affected by the alleged factual discrepancies, thus failing to alert this this Court as to why or how a genuine issue of material fact remains to be litigated as to any of his particular claims. Although we overrule Dr. Leonhardt's second assignment of error based upon these failings, the arguments pertaining to the alleged factual discrepancies contained therein serve as the basis for Dr. Leonhardt's subsequent assignments of error, specifically his fourth assignment of error addressing the issue of statutory immunity.

{¶12} Dr. Leonhardt contends there are several factual discrepancies that should have precluded the granting of summary judgment. First he points to the video of the traffic stop, and alleges that the video shows his driving to be "totally responsible and devoid of anything

unwarranted or unusual." He goes on to state that "[t]he claims of the [o]fficers regarding [his] driving are unwarranted."

{¶13} Dr. Leonhardt next contends that Officer Smith's claim that Dr. Leonhardt "forced his door open with such magnitude that it forced him backwards and resulted in his badge being thrown numerous feet across the parking lot" was "merely a fabrication." Dr. Leonhardt points to the fact that the 42-minute audio does not offer any indication that any officer was hit with a car door. Rather, the audio records one of the officers stating that the door "almost hits him," in reference to the other officer. Dr. Leonhardt further argues that the audio indicates that that the officers forcibly began removing him from his vehicle without giving him time to comply with their order for him to get out of his car.

{¶14} "It is established law that a 'police officer * * * cannot be held personally liable for acts committed while carrying out his or her official duties unless one of the exceptions to immunity is established.'" *Szefcyk v. Kucirek*, 9th Dist. Lorain No. 15CA010742, 2016-Ohio-171, ¶ 11, quoting *Cook v. Cincinnati*, 103 Ohio App.3d 80, 90 (1st Dist.1995). "An employee of a political subdivision is immune from liability unless (1) the employee acted outside the scope of his or her employment or official responsibilities, (2) the employee acted with malicious purpose, in bad faith, wantonly, or recklessly, or (3) the Revised Code expressly imposes liability on the employee." *Moss v. Lorain Cty. Bd. of Mental Retardation*, 185 Ohio App.3d 395, 2009–Ohio–6931, ¶ 21 (9th Dist.). *See also Bodager v. Campbell*, 4th Dist. Pike No. 12CA828, 2013-Ohio-4650, ¶ 30 (noting that immunity from state law claims is distinct from the federal qualified immunity doctrine).

{¶15} "'[R]eckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk

of physical harm and that this risk is greater than that necessary to make the conduct negligent." *Elsass v. Crockett*, 9th Dist. Summit No. 22282, 2005-Ohio-2142, ¶ 21. "Wanton misconduct" is defined as "[t]he failure to exercise any care toward one to whom a duty of care is owed when the failure occurs under circumstances for which the probability of harm is great and when the probability of harm is known to the tortfeasor." *Shalkhauser v. Medina*, 148 Ohio App.3d 41, 48 (9th Dist.2002). "Bad faith implies more than bad judgment or negligence; instead, it 'imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *State v. Dunn*, 9th Dist. Wayne No. 03CA0037, 2004-Ohio-2249, ¶ 63. While issues regarding malice, bad faith, recklessness, and wanton conduct are generally questions left to the jury to resolve, summary judgment is appropriate when a plaintiff fails to present sufficient facts to rebut the presumption of immunity. *Shadoan v. Summit Cty. Children Servs. Bd.*, 9th Dist. Summit No. 21486, 2003–Ohio–5775, ¶ 14–15.

{¶16} In granting summary judgment on Dr. Leonhardt's first claim for assault and battery, and his second claim for negligence, the trial court found that he had "not demonstrated that Defendants' actions were objectively unreasonable, or that they acted with malicious purpose, in bad faith, or in a wanton or reckless manner" and concluded that there were no genuine issues of material fact remaining for trial.

{¶17} The defendant officers do not dispute that force was used in arresting Dr. Leonhardt. Their deposition testimony indicates that force was used as a result of Dr. Leonhardt assaulting Officer Sams by pushing his car door into the officer. We conclude, however, that there are several unresolved issues of fact regarding the officers' justification for use of force,

ultimately creating an issue of fact as to whether the officers acted with malicious purpose, in bad faith, wantonly, or recklessly.

{¶18} The testimony of Officers Sams and Smith offers one version of the events surrounding the traffic stop of Dr. Leonhardt. After initially drawing their weapons and ordering Dr. Leonhardt to sit back down in his car, Officer Sams approached the vehicle and asked for Dr. Leonhardt's driver's license and insurance information. The officers indicated that during their encounter with Dr. Leonhardt, his movements were rapid and erratic, and that he was irate. According to their testimony, when the officers ordered Dr. Leonhardt to close his car door so that they could return to their cruiser, he not only requested that the door remain open, but pushed the door into Officer Sams. Officer Sams' Use of Force report states: "The door hit me hard enough to rip off my badge that was on my uniform under my coat and send it flying through the parking lot." Officer Sams testified that it was at that point that they decided to arrest Dr. Leonhardt. Officer Smith testified that they instructed Dr. Leonhardt to exit his vehicle, and within three to four seconds, forcibly removed him, having to pry Dr. Leonhardt's hands from the steering wheel. All three then fell to the ground.

{¶19} Officer Smith testified that as they were on the ground, with Dr. Leonhardt face-down on the pavement, Dr. Leonhardt continued to resist and refused to give up his arm to be handcuffed. Officer Smith delivered four knee-strikes to Dr. Leonhardt's thigh, and indicated in his report that also delivered punches upon the area of Dr. Leonhardt's knee. As Officer Sams pinned Dr. Leonhardt's shoulder with his knee, Officer Smith administered pepper spray to Dr. Leonhardt's face. Officer Sams was able to attach handcuffs to one of Dr. Leonhardt's wrists, and after Officers Hunt and Nan arrived, the handcuffing and arrest were completed with their assistance.

{¶20} Dr. Leonhardt's version of the events differs substantially from that of the officers. At deposition, Dr. Leonhardt was asked: "[The] officer reported in his reports and then testified under oath that you pushed the door and struck him with it in an effort to keep it open. Is that accurate?" In response, Dr. Leonhardt testified: "No. * * * I was there. I missed that. That did not happen in my experience, no."

{¶21} According to Dr. Leonhardt, the officers pulled him out of his car after he took out his cellphone to call his daughter and let her know what had happened. Dr. Leonhardt testified he was forced to the ground and beaten, his head "bashed" and his arm twisted and broken, and that he was pepper-sprayed while lying helpless on the ground. He stated that although the officers were yelling that he was resisting, he offered no resistance and was as cooperative as he could be, and that he begged for mercy. Dr. Leonhardt also testified that the officers created a false narrative that he was mentally unbalanced, violent, and dangerous, which they conveyed to the EMS team that treated him and transported him to the hospital.

{¶22} Although there is no video captured of the interactions between the officers and Dr. Leonhardt, the audio recording of the encounter indicates that as the officers were attempting to collect Dr. Leonhardt's insurance information, Dr. Leonhardt became increasingly upset by the fact that they had initially pulled their guns on him. As the situation escalates, Dr. Leonhardt yells "Have you lost your minds?" and "You guys are nuts!" to which the officers respond: "Have you lost your mind?" and "You're nuts." An officer then asks for his insurance card "for the third time" and can be heard telling Dr. Leonhardt that his behavior is animated and erratic, creating cause for their concern.

{¶23} After waiting for Dr. Leonhardt to find his insurance information, an officer tells Dr. Leonhardt to "stay right here," that they will "take care of the rest," and that "the door will

close." Dr. Leonhardt says he wants the door open, and is "requesting" that the door remain open. An officer states "request denied" and tells Dr. Leonhardt he is "acting erratically." The officers can be heard ordering Dr. Leonhardt to "get out," which is directly followed by sounds of a struggle and Dr. Leonhardt screaming. An officer repeatedly yells "Stop resisting!" and "Give me your arm!" Dr. Leonhardt repeatedly yells "I give up!" and "I surrender!"

{¶24} As the officers continue to demand that Dr. Leonhardt give them his arm, he can be heard yelling "You're hurting me!" and "Why are you kicking me?" An officer uses pepper spray on Dr. Leonhardt, who can be heard wailing before the audio recording cuts out for approximately twelve seconds. When sound is restored, Dr. Leonhardt is still heard to be crying out as Officers Hunt and Nan arrive in their cruiser and run to assist in the arrest. The audio recording continues as EMS and a supervising officer arrive, and various discussions take place as to the events that had just unfolded.

{¶25} Dr. Leonhardt points us to the fact that the audio recording contains no reference to Officer Sams being hit with a car door. Rather, one of the officers can later be heard to be describing the events to another individual:

> Then we said, you know, forget about your insurance card right now. We'll just, we'll close your door, we'll be right back. "No, my door's staying open!" and with both hands, he like, pushes it open, almost hits him. We're like, sir, no the door is going to stay shut. You're going to stay in here. You tried to get out once, you know, and he's like "The door is staying open!"

{¶26} The omission of any reference to being hit with the door, coupled with the statement that the "door almost hits him," along with the testimony of Dr. Leonhardt, creates a genuine issue of material fact with regard to the officers' explanation for their use of force. An additional factual discrepancy is indicated by a Supplemental Arrest Report, which states that not only did Dr. Leonhardt hit an officer with his door, but also "kicked officer multiple times." The

only testimony of an officer being kicked comes from Officer Smith, stating that as Dr. Leonhardt was lying face-down on the ground, "[h]e kept kicking his feet up in the air" bending at the knees like a flutter kick, "which hit me once."

{¶27} We conclude there are unresolved issues of fact regarding the officers' justification for use of force, ultimately creating an issue of fact as to whether the officers acted with malicious purpose, in bad faith, wantonly, or recklessly. The trial court therefore erred in granting summary judgment in favor of the defendants on the basis of statutory immunity.

{¶28} Dr. Leonhardt's fourth assignment of error is sustained.

ASSIGNMENT OF ERROR SIX

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 1 (ASSAULT AND BATTERY) BASED ON THE COURT'S ANALYSIS OF APPELLANT'S FAILURE TO DEMONSTRATE THE ACTS OF THE INDIVIDUAL APPELLEES WERE OBJECTIONABLY UNREASONABLE OR WITH MALICIOUS PURPOSE, IN BAD FAITH, OR IN WANTON OR RECKLESS MANNER. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

ASSIGNMENT OF ERROR SEVEN

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 2 (NEGLIGENCE) BASED ON THE COURT'S ANALYSIS OF FAILURE TO DEMONSTRATE THE ACTS OF THE INDIVIDUAL APPELLEES WERE OBJECTIVELY UNREASONABLE OR DONE WITH MALICIOUS PURPOSE, IN BAD FAITH, OR IN WANTON OR RECKLESS MANNER. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶29} In his sixth and seventh assignments of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants on his claims for assault and battery and for negligence because genuine issue of material fact existed so as to preclude summary judgment. Because of our disposition of Dr. Leonhardt's fourth assignment of error,

his sixth and seventh assignments of error are rendered moot, and we therefore decline to address them. *See* App.R. 12(1)(c).

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN DETERMINING THE INDIVIDUAL APPELLEES WERE ENTITLED TO QUALIFIED IMMUNITY BARRING APPELLANT'S CLAIMS ON BOTH THE ISSUE OF LIABILITY AND SUIT.

ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIMS REGARDING APPELLEE POLICE OFFICERS' USE OF EXCESSIVE FORCE IN THE COURSE OF ARREST GOVERNED BY THE FOURTH AMENDMENT AND THE DETERMINATION THAT INDIVIDUAL APPELLEES' ACTIONS MET THE REASONABLENESS STANDARDS ESPOUSED BY *GRAHAM V. CONNER*, 490 U.S. 386 (1989). GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶30} In his third assignment of error, Dr. Leonhardt argues the trial court erred in determining that the individual defendants were entitled to qualified immunity. In his fifth assignment of error, Dr. Leonhardt argues the trial court erred in granting summary judgment on his claims of excessive force on the basis that the officers' actions were objectively reasonable. These arguments are inextricably linked and we therefore consider them together.

{¶31} "Section 1983, Title 42, U.S. Code provides a remedy to persons whose federal rights have been violated by government officials. It is limited, however, to deprivations of federal constitutional or statutory rights." *Trubiani v. Graziani*, 9th Dist. Medina No. 2874-M, 2000 WL 14043, *4 (Dec. 29, 1999), citing *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 92 (1994). "To recover under Section 1983, the claimant must establish (1) that the conduct complained of was committed by a person acting under the color of law, and (2) that the conduct deprived him or her of a federally protected right." *Id.*, citing *Shirokey v. Marth*, 63 Ohio St.3d 113, 116 (1992).

{¶32} Under the doctrine of qualified immunity, public officials, including police officers, who perform discretionary functions are generally entitled to immunity from suit in a Section 1983 action. *Cook v. Cincinnati*, 103 Ohio App.3d 80, 85 (1st Dist.1995), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is given to an officer who may have violated a constitutional right of a person if the officer's actions were such that a reasonable officer could have believed that the actions were lawful in light of clearly established law and the information the officer possessed. *Miller-Wagenknecht v. City of Munroe Falls*, 9th Dist. Summit No. 20324, 2001 WL 1545626, *7 (Dec. 5, 2001), citing *Martin v. Eastlake*, 686 F.Supp 620, 624-626 (N.D.Ohio 1988). The contours of the right alleged to have been violated must be sufficiently clear such that a reasonable officer would understand that his actions violate that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991), quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[I]f officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Malley* at 341.

{¶33} "In addressing an excessive force claim brought under [Section] 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Where "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons * * * against unreasonable * * * seizures' of the person." *Id*. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality

of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id*. at 396, quoting *United States v. Place*, 462 U.S. 696, 703 (1983). The application of the test of reasonableness under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397.

{¶34} "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S.Ct. 1148, 1153 (2018), quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.*, quoting *Mullenix* at 312. However, the general statements of law set forth in *Graham* "are not inherently incapable of giving fair and clear warning to officers" in the context of an "obvious case." *Id*. quoting *White v. Pauly*, 137 S.Ct. 548, 552 (2017). "An officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Id.*, quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778-779 (2014).

{¶35} With regard to Dr. Leonhardt's fourth claim for relief pursuant to 42 U.S.C. 1983, the trial court found that the defendants were entitled to qualified immunity and found that Dr. Leonhardt failed to rebut the defendants' claim that the officers used only reasonable force and failed to point to any evidence indicating that the officers acted in a clearly incompetent manner or that their actions were objectively unreasonable. We concluded above, however, that whether the defendant officers used reasonable force remained a question of fact. Here too, we must conclude the trial court erred.

{¶36} As we detailed above, the competing narrative offered by Dr. Leonhardt in contrast to the one offered by the arresting officers creates an issue of fact as to the alleged basis for the officers' use of force. Under Dr. Leonhardt's version of the events, the arresting officers' pretense for the use of force was a fiction, fabricated after the fact, in order to offer a justification for their actions. If such allegations were true, which is a question not for this Court but for the finder of fact, such a distortion of justice would constitute the "obvious case" whereby any reasonable official in the defendant's shoes would have understood that he or she was violating an established right under the Fourth Amendment. We therefore conclude the trial court erred in finding Officers Sams and Smith were entitled to qualified immunity.

{¶37} Dr. Leonhardt's third and fifth assignments of error are sustained.

ASSIGNMENT OF ERROR EIGHT

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 6 (MALICIOUS PROSECUTION/FEDERAL CLAIM) BASED ON THE COURT'S ANALYSIS THAT APPELLEES SMITH AND SAMS HAD PROBABLE CAUSE TO BRING CHARGES AGAINST HIM AND THE CRIMINAL CHARGES WERE NOT RESOLOVED IN HIS FAVOR. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

ASSIGNMENT OF ERROR NINE

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 5 (MALICIOUS PROSECUTION/STATE CLAIM) BASED ON THE COURT'S ANALYSIS THAT APPELLEES SMITH AND SAMS HAD PROBABLE CAUSE TO BRING CHARGES AGAINST HIM AND THE CRIMINAL CHARGES WERE NOT RESOLVED IN HIS FAVOR. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶38} In his eighth and ninth assignments of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants on his claims for malicious prosecution. We disagree.

{¶39} Three elements must be proven in order to prevail on a claim for malicious prosecution: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Froehlich v. Ohio Dept. of Mental Health*, 114 Ohio St.3d 286, 2007-Ohio-4161, ¶ 10. The Supreme Court of Ohio has stated:

> A proceeding is "terminated in favor of the accused" only when its final disposition indicates that the accused is innocent. Thus, an unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused.

(Citations omitted.) *Ash v. Ash*, 72 Ohio St.3d 520,522 (1995).

{¶40} The trial court specifically found that the criminal matter was not resolved in Dr. Leonhardt's favor based on the fact that the indictment was dismissed without prejudice. *See Mann v. Genoa Twp.*, 5th Dist. Delaware No. 01CAE03011, 2002 WL 221112, *4 (Feb. 11, 2002) (finding that a criminal prosecution that was dismissed without prejudice and subject to being re-presented to a grand jury was not a termination in favor of the accused). Dr. Leonhardt has failed to provide this Court with any theory that the trial court erred in finding that the underlying criminal prosecution was not terminated in his favor, has failed to provide any case

law that would support such a theory, and incorrectly contends that "it is undisputed that the criminal prosecution was terminated in [his] favor."

{¶41} It is an appellant's duty to demonstrate his assigned error through an argument that is supported by citations to legal authority and facts in the record; it is not the function of this Court to construct a foundation for his claims. *Ohio Edison Co. v. Williams*, 9th Dist. Summit No. 23530, 2007-Ohio-5028, ¶ 9. Because Dr. Leonhardt has constructed no such foundation, his asserted argument must fail.

{¶42} Dr. Leonhardt's eighth and ninth assignments of error are overruled.

ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED WHEN IT DENIED PLAINTIFF'S PETITION FOR DISCLOSURE OF GRAND JURY TESTIMONY BY MEANS OF ITS JANUARY 24, 2018, ORDER.

{¶43} In his first assignment of error, Mr. Leonhardt argues that the trial court erred in denying his petition for the disclosure of grand jury testimony.

{¶44} The decision to release grand jury testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Coley*, 93 Ohio St.3d 253, 261 (2001). An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶45} In *U.S. v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958), the United States Supreme Court recognized that there are instances when the need for the disclosure of grand jury testimony will outweigh the countervailing policy of maintaining the secrecy of grand jury

proceedings, but that they must be shown with particularity. In *Dennis v. United States*, 384 U.S. 855 (1966), the Supreme Court considered a request for the disclosure of the grand jury testimony of four witnesses who had already testified concerning the same matters. The Court noted that "[n]one of the reasons traditionally advanced to justify nondisclosure of grand jury minutes" was significant in those circumstances, * * * whereas the defendants had shown it to be likely that the witnesses' testimony at trial was inconsistent with their prior grand jury testimony." *Id*. at 872 fn. 18.

{¶46} In *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979), the Supreme Court went on to state that "[f]rom *Procter & Gamble* and *Dennis* emerge[d] the standard for determining when the traditional secrecy of the grand jury may be broken." *Douglas Oil* at 222. "Parties seeking grand jury transcripts * * * must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id*.; *see also Gold v. Prosecutor of Lorain Cty.*, 9th Dist. Lorain No. 3805, 1985 WL 10698, *1 (Apr. 24, 1985) (setting forth the three-part standard as provided for by *Douglas Oil*). "It is clear from *Procter & Gamble* and *Dennis* that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demonstrating this balance rests upon the private party seeking disclosure." *Id*. at 223. "It is equally clear that as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Id*.

{¶47} The crux of Dr. Leonhardt's argument is that he was indicted as a result of false statements made by the defendants. Thus, in his petition to the trial court, Dr. Leonhardt states

as his particularized need that "the disclosure of the [g]rand [j]ury transcripts is now necessary * * * to counter [d]efendants' position on his malicious prosecution claim. Because of our resolution of the eighth and ninth assignments of error, any necessity for the grand jury testimony to counter the defendants' position on Dr. Leonhardt's claims for malicious prosecution is rendered moot. Accordingly, Dr. Leonhardt's first assignment of error is overruled.

ASSIGNMENT OF ERROR TEN

> THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 7 (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS) BASED ON THE COURT'S ANALYSIS THAT APPELLANT FAILED TO SHOW THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS FOR TRIAL. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶48} In his tenth assignment of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants on his claim for intentional infliction of emotional distress because genuine issues of material fact remained so as to preclude summary judgment.

{¶49} The trial court found that Dr. Leonhardt had not pointed to any evidence beyond his own deposition testimony that he suffered from mental anguish as a result of the defendants' actions, and concluded as a result that Dr. Leonhardt had failed to show a genuine issue of material fact existed for trial on the issue.

{¶50} In order to succeed on a claim for the intentional infliction of emotional distress, the flowing elements must be proven:

> (1) the defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and

(4) the plaintiff suffered serious mental anguish of a nature no reasonable man could be expected to endure.

*Jones v. White*, 9th Dist. Summit No. 18109, 1997 WL 669737, *8 (Oct. 15, 1997).

{¶51} In their motion for summary judgment, the defendants advanced no argument challenging whether Dr. Leonhardt suffered from mental anguish as a result of their actions; rather, the defendants' argument is limited to the issue of immunity. Their reply brief raises, for the first time, the issue of whether their conduct rose to the level of being "extreme and outrageous," but again makes no argument as to whether Dr. Leonhardt suffered from mental anguish as a result of their actions.

{¶52} To meet with success, a motion for summary judgment must first shift the burden to the nonmoving party by specifically pointing to some evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy this initial burden, its motion for summary judgment must be denied. *Id.* The defendants' motion for summary judgment did not offer any evidence that would shift the burden to Dr. Leonhardt on the issue of whether he suffered mental anguish as a result of their actions. Consequently, the trial court erred in granting summary judgment on an issue where the moving party failed to satisfy its initial burden.

{¶53} Dr. Leonhardt's tenth assignment of error is sustained.

ASSIGNMENT OF ERROR ELEVEN

THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S CLAIM NO. 8 (RESPONDEAT SUPERIOR/STATE CLAIM) BASED ON THE IMPROPER AND UNSUPPORTED DETERMINATION THAT IT WAS NOT RELEVANT DUE TO THE COURT'S DISMISSAL OF ALL CLAIMS AGAINST INDIVIDUAL APPELLEES. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶54} In his eleventh assignment of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants on his claim for respondeat superior because genuine issues of material fact remain so as to preclude summary judgment. We agree.

{¶55} In its entry granting summary judgment in favor of the defendants on Dr. Leonhardt's claim for respondeat superior, the trial court concluded that because it had dismissed all of Mr. Leonhardt's claims against all individual officers, there was no longer a basis for a claim of respondeat superior. In light of our disposition of the previous assignments of error, the basis of the trial court's ruling in granting summary judgment is nullified.

{¶56} Mr. Leonhardt's eleventh assignment of error is sustained.

## ASSIGNMENT OF ERROR TWELVE

THE TRIAL COURT ERRED IN GRANTING APPELLANT'S MOTION FOR SUMMARY JUDGMENT. THE COURT'S ORDER (A-1) WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE PRESENTED FOR THE COURT'S REVIEW AND INTERPRETATION. GENUINE ISSUES OF MATERIAL FACT EXIST TO PRECLUDE SUMMARY JUDGMENT.

{¶57} In his twelfth assignment of error, Dr. Leonhardt argues the trial court erred in granting summary judgment in favor of the defendants because "there was sufficient credible evidence for the [c]ourt to find substantial and significant material issues of fact existed to preclude summary judgment.

{¶58} This assignment of error lacks the specificity necessary for meaningful review and fails to point to any specific error of the trial court. Likewise, it is not supported by reference to any applicable law or to the record. It appears to be offered as a generalization of the underlying theory pertaining to all prior assignments of error, i.e., genuine issues of material fact remained to be litigated, but as such, offers no further concrete argument for this Court to consider. Moreover, it is largely rendered moot by this Court's disposition of the prior

assignments of error. To the extent it has not been so rendered, Dr. Leonhardt's twelfth assignment of error is overruled.

## III.

{¶59} Dr. Leonhardt's first, second, eighth, ninth, and twelfth assignments of error are overruled. Dr. Leonhardt's third, fourth, fifth, tenth, and eleventh assignments of error are sustained. His sixth and seventh assignments of error are rendered moot. The judgment of the Summit County Court of Common Pleas is affirmed in part, and reversed and remanded in part.

Judgment affirmed in part,
and reversed and remanded in part.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
SCHAFER, J.
<u>CONCUR.</u>


<u>APPEARANCES:</u>

DAVID M. LOWRY, Attorney at Law, for Appellant.

EVE V. BELFANCE, Director of Law, and JOHN CHRISTOPHER REECE, MICHAEL J. DEFIBAUGH, and BRIAN D. BREMER, Assistant Directors of Law, for Appellees.