[Cite as *Griesmar v. Stow*, 2025-Ohio-1993.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| CANDICE GRIESMAR | C.A. No.    31202 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CITY OF STOW, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellees | CASE No.    CV 2020-05-1564 |

DECISION AND JOURNAL ENTRY

Dated: June 4, 2025

SUTTON, Judge

{¶1}   Plaintiff-Appellant Candice Griesmar appeals the judgment of the Summit County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}   On May 30, 2019, Ms. Griesmar was stopped by Stow police for speeding and subsequently arrested for and charged with possession of drugs, in violation of R.C. 2925.11, a felony of the fifth degree, possession of dangerous drugs, in violation of R.C. 4729.51(C)(3), a misdemeanor of the first degree, possession of marijuana, in violation of R.C. 2925.11, a minor misdemeanor, and speeding.  The charges were dismissed by the Stow Municipal Court because Ms. Griesmar was indicted by the Summit County Grand Jury on a fifth-degree felony drug charge, which was also eventually dismissed without prejudice upon motion of the prosecutor.

{¶3} On May 25, 2020, Ms. Griesmar filed a complaint against the City of Stow and the police officers involved in her stop and arrest, setting forth five "Claim[s] for Relief." Her first claim for relief was captioned "Violation §1983." Her second claim for relief was captioned "Inadequate Training and Supervision." Her third claim for relief was captioned "Declaratory and Injunctive Relief," and appeared to refer to the first two claims for relief. Ms. Griesmar's fourth claim for relief was captioned "State Action False Arrest and Imprisonment." Her fifth claim for relief was captioned "State Action-Ohio Constitutional and Public Policy Violations." In addition, after setting forth her "Fifth Claim for Relief," Ms. Griesmar included in her demand for relief "declaratory and injunctive relief against defendants determining the practices of unreasonable delay in seeking probable cause determinations after warrantless arrest," but did not set forth this demand as a separate "Claim for Relief."

{¶4} Defendants-Appellees the City of Stow and Officer J. Bailey and Lieutenant H. Prusha (collectively "Stow") removed the case to the United States District Court for the Northern District of Ohio ("federal district court") on the basis of federal question jurisdiction.

{¶5} On January 24, 2022, the federal district court granted summary judgment in favor of Stow and found the following facts. At approximately 12:58 a.m. on May 30, 2019, Stow Police stopped Ms. Griesmar for speeding. She was clocked at over 50 miles per hour in a 35 mile per hour zone. The police officer who approached Ms. Griesmar's vehicle smelled a slight odor of marijuana but did not mention it to Ms. Griesmar at that time. The officer returned to his vehicle to write up a citation for speeding. When he returned to Ms. Griesmar's vehicle, the officer continued to smell a "light odor of marijuana coming from the vehicle." The officer asked for Ms. Griesmar's consent to search the vehicle but Ms. Griesmar said she "just wanted to go home." The officer told Ms. Griesmar that due to the odor of marijuana that was not an option and he was

going to search her vehicle. Ms. Griesmar told the officer the odor of marijuana was emanating from marijuana roaches in her ashtray, which she showed to him. At that point, the officer told Ms. Griesmar to exit the vehicle. During the search of the vehicle, the officer found two plastic bags containing ten pills, a folded receipt containing one pill, and suspected drug paraphernalia. Using a database accessed from her cell phone, Lieutenant Prusha identified the pills as oxycodone hydrochloride and cyclobenzaprine hydrochloride.

{¶6} At that point, Ms. Griesmar was *Mirandized*. She claimed the pills were prescribed but she could not produce a prescription for the pills or remember their names. Ms. Griesmar was placed under arrest and transported to the Macedonia jail. Later that morning, she was arraigned by video in the Stow Municipal Court. At approximately 3:00 p.m. that same afternoon, she was released on a personal recognizance bond.

{¶7} In its decision granting summary judgment in favor of Stow, the federal district court determined there was probable cause to stop Ms. Griesmar for speeding, for her continued detention, to search her vehicle without a warrant, and to arrest her without a warrant. The federal district court stated, "[i]n searching Ms. Griesmar's vehicle, Officer Bailey discovered, in addition to marijuana roaches, a section of straw consistent with drug use and pills contained in plastic bags. [] Lieutenant Prusha identified the pills as controlled substances[,]" and concluded "[t]hese facts are sufficient to establish probable cause for Ms. Griesmar's arrest."

{¶8} The federal district court determined Ms. Griesmar's total detention from the time of the traffic stop to her release from jail was less than fifteen hours which was not unreasonable and therefore did not violate the Fourth Amendment to the United States Constitution.

{¶9} As for Ms. Griesmar's claim of inadequate training and supervision, the federal district court stated, "[i]n this case, because no employee of the City of Stow violated any of

Plaintiff's federal constitutional rights … [Ms. Griesmar] may not maintain a claim against the City of Stow."

{¶10} The federal district court declined to exercise supplemental jurisdiction over Ms. Griesmar's state-law claims and remanded "Counts III through V"[1] of Ms. Griesmar's complaint back to the Summit County Court of Common Pleas.

{¶11} Ms. Griesmar appealed the decision of the federal district court to the United States Court of Appeals for the Sixth Circuit, which affirmed the federal district court's decision. The Sixth Circuit held Ms. Griesmar's stop, detention, arrest, the search of her vehicle, and her detention in the jail until her release that same day were supported by probable cause and did not violate the Fourth Amendment. Concerning Ms. Griesmar's arrest, the Sixth Circuit stated, "[possession of marijuana was not the only crime for which the officers had probable cause to arrest [Ms.] Griesmar. In the search of [Ms.] Griesmar's vehicle, [the officers] discovered pills in plastic baggies and a small section of straw consistent with illicit drug use. Given the suspicious way the pills were contained, [Ms.] Griesmar's inability to remember the names of the medications or produce prescriptions, the straw she claimed was used to nasally ingest the medications, and the presence of other drugs in the car, [the officers] acted as reasonably prudent officers in believing that, under the facts known to them, [Ms.] Griesmar's possession of the controlled substances was illegal." In disposing of Ms. Griesmar's appeal on the federal claims against Stow, the Sixth Circuit stated, "no constitutional violation occurred."

{¶12} Upon remand to the Summit County Court of Common Pleas, Stow filed a motion for summary judgment on the remaining claims, arguing res judicata applied to Ms. Griesmar's

---

[1] The federal district court relabeled Ms. Griesmar's "claims for relief" as "counts" in its decision.

state-law claims, specifically issue preclusion or collateral estoppel. The trial court granted the motion, stating in part:

> The facts related to [Ms. Griesmar's] traffic stop, arrest and detention have been determined by the federal district court and the Sixth Circuit Court of Appeals, and adopted by this [c]ourt. It has already been determined, based on the factual findings of the federal courts, that Ms. Griesmar's stop, arrest, and detention were based on probable cause. Ms. Griesmar has been unable, at any level, to demonstrate that [Stow] committed any statutory or constitutional violations.
>
> Ms. Griesmar's state law claims rely on the same set of facts that were decided in the federal court progression of this case. The crux of each of Ms. Griesmar's claims center upon the legal validity of the traffic stop, search, arrest, and detention that occurred on May 30, 2019. Ms. Griesmar had a full and fair opportunity to litigate the facts of her case. The federal courts made sufficient factual findings to determine Ms. Griesmar's stop, arrest, and detention were based on probable cause and constitutionally valid.

{¶13} The common pleas court granted summary judgment on "the three remaining state law claims in Ms. Griesmar's complaint," which included the remanded third claim for relief "Declaratory and Injunctive Relief."

{¶14} Ms. Griesmar appeals, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**A TRIAL COURT ERRS BY GRANTING SUMMARY JUDGMENT ON RES JUDICATA GROUNDS AGAINST STATE LAW CLAIMS REMANDED BY A FEDERAL COURT THAT DECLINED TO EXERCISE JURISDICTION.**

{¶15} In her sole assignment of error, Ms. Griesmar argues the trial court erred by applying the doctrine of res judicata to her state-law claims. Stow argues the trial court properly applied the doctrine of issue preclusion because the facts essential to Ms. Griesmar's state-law claims were previously determined by the federal courts.

## Summary Judgment Standard

{¶16} Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992).

{¶17} A motion for summary judgment is an appropriate tool for determining whether the doctrine of res judicata applies. *Richards v. Cook*, 1981 WL 2928, *2 (11th Dist. Mar. 23, 1981). We review a trial court's decision applying res judicata de novo. *Galvin v. Adkins*, 2008-Ohio-3202, ¶ 16 (9th Dist.).

## Res Judicata

{¶18} "'Res judicata' incorporates the concepts of both claim preclusion and issue preclusion." *Robinholt v. Wilson*, 2023-Ohio-248, ¶ 13 (9th Dist.), quoting *Huber v. Inpatient Med. Servs., Inc.* 2018-Ohio-4686, ¶ 9 (9th Dist.).

> The doctrine of issue preclusion, also known as collateral estoppel, holds that a *fact or a point* that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.

*Glidden Co. v. Lumbermens Mut. Cas. Co*., 2006-Ohio-6553, ¶ 44, quoting *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395 (1998) (Emphasis added.)

The party asserting issue preclusion must prove the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action. *Green v. Clair*, 2015-Ohio-662, ¶ 17 (9th Dist.), quoting *Price v. Carter Lumber Co.,* 2012-Ohio-6109, ¶ 10 (9th Dist.).

{¶19} Ms. Griesmar cites this Court's decision in *Deryck v. Akron City Sch. Dist.,* 1988 WL 87229, (9th Dist. Aug. 17, 1988) in support of her argument that identical issues essential to her state claims were not decided by the federal courts. In that case, we stated, "[w]here the identical issues raised by a plaintiff's state court complaint have not been previously litigated in federal court, the doctrine of collateral estoppel does not preclude relitigation of those same issues." *Id.* at *2. In *Deryck,* the plaintiff filed a complaint in federal court that included state and federal claims. The federal court ruled on the federal claims and dismissed the state-law claims without prejudice. Mr. Deryck then filed a complaint in the court of common pleas on his state-law claims. Mr. Deryck's federal claims were decided by the federal court on the basis that Mr. Deryck had no rights enforceable under 42 U.S.C. §1983 because he was an independent contractor, not an employee. *Deryck* at *2. Mr. Deryck's state-law claim was for breach of contract, which involved different issues than were litigated in federal court.

{¶20} In Ms. Griesmar's case, the facts and issues essential to Ms. Griesmar's state-law claims were decided by the federal court, which include the facts surrounding Ms. Griesmar's stop, search, arrest, and detention as well as a determination that the stop, search, arrest, and detention were supported by probable cause under the Fourth Amendment to the United States Constitution. Therefore, the facts essential to Ms. Griesmar's state claims and federal claims are identical. Ms. Griesmar's federal claims against Stow were alleged violations of the Fourth Amendment to the

United States Constitution[2] and a *Monell* claim against the City of Stow for alleged inadequate training and supervision. However, "[t]here can be no liability under *Monell* [*v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978)] without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014). Therefore, both of Ms. Griesmar's federal claims were wholly dependent on whether, based upon the facts of the stop, detention, search, and arrest, Stow violated the Fourth Amendment to the United States Constitution. The federal courts determined, based on the undisputed facts, that Stow did not violate the Fourth Amendment.

{¶21} In addition, "[t]he existence of a final judgment is a prerequisite to the application of res judicata." *Huber* at ¶ 9; *Glidden Co.* at ¶ 45 (for issue preclusion to apply, "issues must have been determined by a final appealable order"). Ms. Griesmar's federal claims were determined by a final appealable order, which was then appealed to the Sixth Circuit Court of Appeals and affirmed.

{¶22} The federal litigation involved the same parties as here. The facts concerning the stop, arrest, vehicle search and detention of Ms. Griesmar and the issue of probable cause were litigated and directly determined in summary judgment in the federal district court, affirmed by the Sixth Circuit, and were essential to Ms. Griesmar's federal claims. The parties do not dispute the federal courts had jurisdiction over the *facts* underlying Ms. Griesmar's federal claims or the *issue* of probable cause under the Fourth Amendment to the United States Constitution. The court

---

[2] Ms. Griesmar also alleged violations of the Fourteenth Amendment to the United States Constitution, but the federal district court stated, "[Ms. Griesmar] does not explain how [Stow's] actions violated Ohio law or, if a violation occurred, how that violation deprived [her] of her rights under the Fourteenth Amendment. Accordingly, and consistent with clear precedent applying Fourth Amendment jurisprudence to similar claims, the Court analyzes [Ms. Griesmar's] claims under governing principles under the Fourth Amendment."

of common pleas stated, "Ms. Griesmar's remaining state claims involve the identical *factual scenario* that was litigated to finality in the federal courts." (Emphasis added.)

{¶23} Because the facts surrounding Ms. Griesmar's stop, search, arrest, and detention and the issue of probable cause were actually litigated, directly determined, and essential to Ms. Griesmar's federal claims against Stow, and those issues were litigated to finality in the federal courts, the prerequisites to the application of res judicata have been satisfied. We now turn to Ms. Griesmar's state-law claims to analyze whether the trial court properly applied res judicata to those claims.

### <u>False Arrest and False Imprisonment-Fourth Claim of the Complaint</u>

{¶24} Claims of false arrest and false imprisonment require proof of the same essential elements, and therefore, are "indistinguishable." *Frazier v. Clinton Cty. Sheriff's Office*, 2008-Ohio-6064, ¶ 22 (12th. Dist.) quoting *Barnes v. Meijer Dept. Store,* 2004-Ohio-1716, ¶ 15 (12th Dist.). "[F]alse imprisonment occurs when a person confines another intentionally '*without* lawful *privilege* and against [her] consent within a limited area for any appreciable time, however short.'" (Emphasis in original.) *Jacobson v. Akron Children's Hospital*, 2023-Ohio-2225, ¶ 14 (9th Dist.), citing *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71 (1977). Therefore, claims of false arrest and false imprisonment are proven by showing: (1) the intentional detention of the person; and (2) the unlawfulness of the detention. *See Niessel v. Meijer, Inc.*, 2001-Ohio-8645 (12th. Dist.). An arrest based on probable cause is a lawful detention. Therefore a finding of probable cause serves to defeat false arrest and false imprisonment claims. *Radvansky v. City of Olmstead Falls* 395 F.3d 291, 315 (6th Cir. 2005).

{¶25} There is no dispute Stow intentionally detained Ms. Griesmar. However, the federal district found based on the undisputed facts before it that there was probable cause to arrest

and detain Ms. Griesmar and therefore her arrest and detention were lawful under the Fourth Amendment to the United States Constitution. Probable cause under the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution are virtually identical. *State v. Robinette*, 80 Ohio St.3d 234, 238 (1997) ("Accordingly, [the Supreme Court of Ohio] has interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the Fourth Amendment.").

{¶26} Ms. Griesmar argues the Ohio Constitution may afford greater protections than the United States Constitution concerning warrantless arrests for minor misdemeanors. Here, however, Ms. Griesmar was arrested for and charged with a felony of the fifth degree and misdemeanor of the first degree in addition to a minor misdemeanor. The trial court determined all of Ms. Griesmar's state-law claims were barred by res judicata because the claims were defeated by a finding of probable cause under the United States Constitution, and the Ohio Constitution affords the same protections as the federal constitution under the facts of this case.

{¶27} In granting summary judgment in favor of Stow on Ms. Griesmar's false arrest and false imprisonment claims, the court of common pleas stated, "[b]ased on the factual findings made by the Sixth Circuit, *and adopted by this Court*, Ms. Griesmar cannot satisfy the elements of her false arrest and false imprisonment claims." (Emphasis added.) Therefore, the trial court, using the facts as determined by the federal court, applied those facts under state law to Ms. Griesmar's state law claims of false imprisonment and false arrest and concluded she could not satisfy the elements of those claims. Because Ms. Griesmar's arrest and detention were lawful under the Fourth Amendment to the United States Constitution, they were lawful under the Ohio Constitution as well. *Robinette* at 238. There was probable cause to support the traffic stop, vehicle search, arrest,

and detention of Ms. Griesmar, therefore they were *with* lawful privilege under Ohio law, defeating Ms. Griesmar's state law claims of false imprisonment and false arrest.

**{¶28}** Therefore, there is no genuine issue as to any material fact to be litigated and Ms. Griesmar's state-law claims for false arrest and false imprisonment must fail. The trial court did not err in granting summary judgment in favor of Stow on these claims.

### Ohio Constitutional and Public Policy Claims-Fifth Claim of the Complaint

**{¶29}** Ms. Griesmar argues that Stow's policy of warrantless arrests violates the Ohio Constitution and Ohio public policy.

**{¶30}** In granting summary judgment in favor of Stow on Ms. Griesmar's "Ohio Constitutional and Public Policy Claims," the court of common pleas stated, "[t]he facts related to [Ms. Griesmar's] traffic stop, arrest[,] and detention have been determined by the federal district court and the Sixth Circuit Court of Appeals, and adopted by this Court. It has already been determined, based on the factual findings of the federal courts, that Ms. Griesmar's stop, arrest, and detention were based on probable cause." Again, the trial court applied the facts as found by the federal courts to Ms. Griesmar's claims that Stow violated the Ohio Constitution and public policy, stating, "Ms. Griesmar has been unable, *at any level*, to demonstrate that [Stow] committed any statutory or constitutional violations." (Emphasis added.)

**{¶31}** The Supreme Court of Ohio has held, "consistently with United States Supreme Court precedent, 'A warrantless arrest that is based upon probable cause and occurs in a public place does not violate the Fourth Amendment' to the United States Constitution." *State v. Jordan*, 2021-Ohio-3922, ¶ 2. The Supreme Court of Ohio further stated, "we reiterate that holding and further hold that neither a showing of exigent circumstances nor a showing of the impracticability

of obtaining an arrest warrant is necessary to sustain the constitutionality of a warrantless arrest under either the United States Constitution or the Ohio Constitution." *Id.*

**{¶32}** The federal courts and the court of common pleas determined there was probable cause to arrest Ms. Griesmar. Ms. Griesmar was arrested on charges that included a felony of the fifth degree and a misdemeanor of the first degree. A felony arrest based on probable cause does not violate the Ohio Constitution. *Jordan* at ¶ 32. In addition, the Ohio Revised Code allows for warrantless arrests. *See, e.g.*, R.C. 2935.03.[3] Because probable cause existed for Ms. Griesmar's arrest and a judicial probable cause determination was made shortly after her arrest, Ms. Griesmar cannot show her arrest was unconstitutional under the Ohio Constitution or violative of Ohio public policy as set forth in Ohio statutes.

**{¶33}** Because there remains no genuine issue as to any material fact to be litigated, the trial court did not err in granting summary judgment in favor of Stow on Ms. Griesmar's claim for violations of the Ohio Constitution and public policy.

### Declaratory and Injunctive Relief-Third Claim of the Complaint

**{¶34}** Lastly, the third claim of Ms. Griesmar's complaint was for declaratory and injunctive relief. Because there were no violations of the Ohio Constitution or public policy by Stow, there was nothing for the trial court to enjoin. Ohio courts may dismiss a declaratory judgment action if there is no real controversy or justiciable issue between the parties. *Logan v. Champaign County Board of Elections*, 2023-Ohio-4688, ¶ 22 (2d Dist.). "Thus in the absence of

---

[3] R.C. 2935.03(A)(1) allows police to "arrest and detain, until a warrant can be obtained" a person suspected of violating Ohio law. In this case, Ms. Griesmar was released from jail after a judicial determination of probable cause had been made by the Stow Municipal Court within a few hours of her arrest.

an actual controversy, a trial court may not render a declaratory judgment." *Cool v. Frenchko,* 2022-Ohio-3747, ¶ 18 (10th Dist.).

{¶35} Because there remains no genuine issue as to any material fact to be litigated, the trial court did not err in granting summary judgment in favor of Stow on Ms. Griesmar's claim for declaratory and injunctive relief.

{¶36} The trial court did not err in granting summary judgment on Ms. Griesmar's three remaining claims for relief: false arrest and false imprisonment; Ohio constitutional and public policy violations; and declaratory and injunctive relief. Accordingly, Ms. Griesmar's assignment of error is overruled.

### III.

{¶37} For the forgoing reasons, Ms. Griesmar's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

**{¶38}** I respectfully dissent from the judgment of the majority. Under principles of collateral estoppel, the trial court should have accepted and adopted the facts as determined by the federal courts and applied those facts to the outstanding Ohio claims. Instead, the trial court adopted the legal conclusions of the federal courts and utilized those conclusions in determining the Ohio claims were barred. This is an important distinction because "[t]he Ohio Constitution is a document of independent force. In the areas of individual rights and civil liberties, the United States Constitution, where applicable to the states, provides a floor below which state court decisions may not fall. As long as state courts provide at least as much protection as the United States Supreme Court has provided in its interpretation of the federal Bill of Rights, state courts are unrestricted in according greater civil liberties and protections to individuals and groups." *Arnold v. Cleveland*, 67 Ohio St.3d 35 (1993), paragraph one of the syllabus. Examples of circumstances in which the Ohio Constitution has been determined to provide greater protections than its federal counterpart are numerous. *See State v. Mole*, 2016-Ohio-5124, ¶ 14-23. One such

example is the area of Fourth Amendment law, wherein the Ohio Supreme Court has held that the Ohio Constitution provides greater protections against warrantless arrests for minor misdemeanors. *See State v. Brown*, 2003-Ohio-3931, ¶ 7. Thus, "[t]he decisions of the [United States Supreme] Court are not, and should not be, dispositive of questions regarding rights guaranteed by counterpart provisions of state law. Accordingly, such decisions are not mechanically applicable to state law issues, and state court judges and the members of the bar seriously err if they so treat them." (Internal quotations and citations omitted.) *Mole* at ¶ 71 (Lanzinger, J., concurring in judgment only). Therefore, I would reverse and remand the matter for the trial court to properly apply the principles of collateral estoppel in the first instance.

APPEARANCES:

MARK H. LUDWIG, Attorney at Law, for Appellant.

ANDREW MILLS HOLFORD, Attorney at Law, for Appellant.

FRANK H. SCIALDONE and JOHN T. MCLANDRICH, Attorneys at Law, for Appellees.