[Cite as *Willey v. Springfield Twp.*, 2026-Ohio-1842.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

PAULA WILLEY

    Appellant

    v.

SPRINGFIELD TOWNSHIP, et al.

    Appellees

C.A. No.    31550

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2023-06-1988

DECISION AND JOURNAL ENTRY

Dated: May 20, 2026

FLAGG LANZINGER, Presiding Judge.

{¶1} Appellant-Plaintiff Paula Willey appeals the judgment of the Summit County Court of Common Pleas granting summary judgment to Appellees-Defendants Springfield Township, Springfield Township Police Department, Springfield Township Police Sergeant Kristopher London, Springfield Township Police Officer Hunter Chapman, Springfield Township Police Officer Billie Laurenti, Springfield Township Police Officer Jane Doe, Springfield Township Fire Department, Springfield Township Firefighter Brett Bell, Former Springfield Township Fire Chief Vic Wincik, Laura Burrell, Leann Burks, and Chase Whipp.

{¶2} Willey also appeals the judgment of the Summit County Court of Common Pleas dismissing her claims for defamation against Burrell, David Christian, and Abigail Christian.

{¶3} For the reasons that follow, this Court affirms.

I.

{¶4} This matter relates to the conduct of the parties during and after a fire at Burks' property. Burks' property has two residences. The fire occurred at the primary residence where Burks resided with her children, her then-paramour, Chase Whipp, and Whipp's minor child. Willey, Burks' mother, resided in a separate structure on the property, identified by the parties as a mother-in-law suite ("Suite").

{¶5} In the early evening hours of June 22, 2022, a fire started at the primary residence. Burks was at home with her three children, five dogs, and three cats. The Springfield Township Fire Department responded. The home was a total loss.

{¶6} Although Willey was advised of the fire, she did not arrive at the property until around 12:30 a.m. Nonetheless, firefighters were still on scene addressing the fire. After Willey arrived, an altercation occurred between Willey and Burks, Whipp, a number of Burks' friends (Burrell, Abigail Christian, and David Christian), and a firefighter. As a result of the altercation, the Springfield Township Fire Department requested the presence of the Springfield Township Police Department. Sergeant London, Officer Chapman, and Officer Laurenti responded. Willey was arrested and charged with misconduct at an emergency in violation of R.C. 2917.13, making false alarms in violation of R.C. 2917.32, and disorderly conduct in violation of R.C. 2917.11. The charges were dismissed several months later.

{¶7} Willey subsequently filed a complaint alleging claims for (1) malicious prosecution against Springfield Township, the Springfield Township Police Department, and Sergeant London, Officer Hunter, Officer Laurent, and Officer Jane Doe, individually and in their capacity as a Springfield Township police officer; (2) false arrest against Sergeant London, Officer Hunter, Officer Laurent, and Officer Jane Doe, individually and in their capacity as a Springfield Township

police officer; (3) civil trespass against Burks; (4) defamation against Burks, Burrell, Whipp, Abigail Christian, David Christian; (5) civil rights violations pursuant to 42 U.S.C. 1983 against Springfield Township, Springfield Township Police Department, and Sergeant London, Officer Hunter, Officer Laurenti, and Officer Jane Doe, individually and in their capacity as a Springfield Township police officer; (6) assault against Burrell and Springfield Township Firefighter Brett Bell, individually and in his capacity as a Springfield Township firefighter; and (7) intentional infliction of emotional distress against all previously named defendants and former Springfield Township Fire Chief Vin Wincik, individually and in his capacity as the Springfield Township fire chief.

{¶8} In her complaint, Willey alleged that during the fire incident, an unknown person had entered her home without her permission and placed four dogs inside. She also alleged that someone had turned off all electrical service to her home. She alleged she had a discussion with Burks during which Burks admitted either Burks or one of her children and entered Willey's home. She alleged Burks verbally accosted her and that she was "physically restrained by and physically accosted by a male firefighter . . . [and] also physically accosted by Laura Burrell." She further alleged that when she tried to explain this to police officers, they "taunted, laughed at, and demonstrated a lack of respect towards [her,]" and arrested her. She alleged Burks, Burrell, Abigail Christian, David Christian, and Whipp all made false statements to police.

{¶9} David Christian, Abigail Christian, and Burrell filed a joint motion to dismiss Willey's defamation claims against them pursuant to Civ.R. 12(B)(6). Willey responded in opposition. The trial court granted the motion.

{¶10} The remaining parties answered the complaint and the matter proceeded through the pretrial process. After a period of discovery, the remaining parties all filed motions for

summary judgment, asserting they were entitled to judgment on all claims Willey had brought against them. Willey filed a joint response in opposition to all of the parties' separate motions for summary judgment. The trial court filed an order granting summary judgment to all of the defendants on all of Willey's remaining claims.

{¶11} Willey timely appealed, raising two assignments of error.

II.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.**

{¶12} In her first assignment of error, Willey generally contends the trial court erred in granting summary judgment to most of the defendants on all her remaining claims.[1] Although Willey intermingles her arguments with respect to her distinct claims against each defendant, she has structured her brief in such a way as to allow for reasonable analysis. *See* App.R. 12(A); App.R. 16(A)(7).

{¶13} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Husa v. Knapp*, 2020-Ohio-6986, ¶ 19 (9th Dist.), citing *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist. 1983).

---

[1] In its order granting summary judgment, the trial court noted it was undisputed that the Springfield Township Police Department and the Springfield Township Fire Department are departments of the political subdivision of Springfield Township. The trial court concluded that the departments were not sui juris and granted summary judgment to the Springfield Township Defendants on all of Willey's claims brought against the police department and the fire department. Willey does not raise an argument on appeal asserting the trial court erred in granting summary judgment to the Springfield Township Police Department and the Springfield Township Fire Department on this issue.

{¶14} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the movant must first be able to point to evidentiary materials demonstrating there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). The non-moving party may not rest upon the mere allegations or denials in her pleadings, but must point to or submit evidence of the type specified in Civ.R. 56(C). *Dresher* at 293. Additionally, any affidavit presented in support or opposition to a motion for summary judgment must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." Civ.R. 56(E).

**1. Willey's Assault Claim against Burrell**

{¶15} On appeal, Willey contends the trial court erred in granting summary judgment to Burrell on Willey's claims for assault. We disagree.

{¶16} "To establish a claim of civil assault, one must demonstrate a willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." (Internal quotation omitted.) *Brooks v. Lady Foot Locker*, 2005-Ohio-2394, ¶ 18 (9th Dist.). "A key element of assault is that the alleged tortfeasor 'knew with substantial certainty that his or her act would bring about harmful or offensive contact.'" *Id.*,

quoting *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406 (10th Dist. 1993). "The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching." *Brooks* at ¶ 18, quoting *Smith* at 406.

{¶17} In this case, the trial court granted Burrell's motion for summary judgment on Willey's claim for assault on two alternative bases, (1) no reasonable juror could find that Willey was placed in fear by Burrell's contact, and (2) no reasonable juror could find that Burrell's contact was intended to inflict injury upon Willey. However, Willey only argues on appeal that the trial court erred when it concluded conclusion no juror could find that she was placed in fear by Burrell's contact.

{¶18} "'When a trial court grants judgment on multiple, alternative bases and an appellant does not challenge one of those bases on appeal, this Court will uphold the judgment on the unchallenged basis.'" *Covel v. PNC Bank, NA*, 2022-Ohio-1477, ¶ 7 (9th Dist.), quoting *Schutte v. Summit Cty. Sheriff's Office*, 2018-Ohio-2565, ¶ 21 (9th Dist.). "It is neither the province nor the duty of this Court to create an argument on an appellant's behalf." *Covel* at ¶ 7, citing App.R. 16(A)(7).

{¶19} Therefore, "even assuming, without deciding, that the trial court erred when it granted summary judgment on the basis that [no reasonable juror could find that Willey was placed in fear by Burrell's contact, Willey] has still failed to establish that the trial court's alternate basis for granting summary judgment on the [assault] claim was incorrect." *Covel* at ¶ 7, citing *Tabatabai v. Thompson*, 2017-Ohio-361, ¶ 15 (9th Dist.) and *Schutte* at ¶ 21. To the extent Willey's first assignment of error argues the trial court erred in granting summary judgment in favor of Burrell on Willey's claim for assault against her, it is overruled.

**2. Willey's Claim for Trespass against Burks**

{¶20} On appeal, Willey contends the trial court erred by granting Burks summary judgment on her claim for trespass. We disagree.

{¶21} In her complaint, Willy alleged in part that Burks had "trespassed on and into [Willey]'s property, depositing 4 dogs into the house . . . ." "Trespass is an invasion of the possessory interest in property." *Bonkoski v. Lorain Cty.*, 2018-Ohio-2540, ¶ 14 (9th Dist.), quoting *Crown Property Dev., Inc. v. Omega Oil Co.*, 113Ohio App.3d 647, 658 (12th Dist. 1996). One is subject to liability to another for trespass if he intentionally enters land in the possession of the other or causes a thing or a third person to do so, regardless of whether she causes harm to any legally protected interest of the other. *Id.*, quoting *Baker v. Shymkiv*, 6 Ohio St.3d 151, 153 (1983). To prevail on a claim of civil trespass, a plaintiff must establish that the defendant "engaged in (1) an unauthorized intentional act and (2) entry upon land in the possession of another." *Ohio Bell Tel. Co. v. Eclipse Cos.*, 2015-Ohio-4005, ¶ 12 (9th Dist.), quoting *Henderson v. Glancy*, 2011-Ohio-1152, ¶ 6 (9th Dist.).[2]

{¶22} In her motion for summary judgment, Burks asserted Willey could not prove either element of a claim for civil trespass because Burks' son had entered the property with permission and Willey did not have possession of the property. In support, Burks pointed to Willey's deposition testimony wherein Willey admitted that (1) she had given her grandchildren permission to enter the Suite in the case of an emergency, (2) Burks owned the Suite, (3) Willey did not have

---

[2] We note that Willey cites to several cases in her merit brief stating the elements for a claim for negligence rather than a claim for trespass. However, Willey only asserted claims against Burks for trespass and intentional infliction of emotional distress. We confine our analysis accordingly.

a rental/lease agreement for the Suite, and (4) Willey did not pay rent for Suite. Burks also asserted that there was no evidence that Willey had suffered any damage from the alleged trespass.

{¶23}  In her response, Willey did not dispute that she testified to the above facts. Instead, Willey argued the evidence showed Burks had directed her son to put the dogs in the Suite. Willey purported to support this assertion with reference to Burks' deposition testimony, Willey's own deposition testimony, and Willey's own affidavit. A review of the referenced evidence does not contain any support for Willey's claim that Burks directed her son to put the dogs in the Suite. Regardless, Willey did not explain why any such direction by Burks would negate her previous grant of permission to her grandchildren to enter the Suite in an emergency.

{¶24}  Based upon the above, we conclude Burks met her burden to show there remained no genuine issues of material fact regarding Willey's trespass claim and that she was entitled to judgment thereon. We further conclude that Willey failed to meet her reciprocal burden to show there remained any genuine issues of material fact.

{¶25}  Therefore, the trial court did not err when it granted summary judgment to Burks on Willey's claim for trespass. To the extent her first assignment of error asserts otherwise, it is overruled.

### 3. Willey's Claim for Defamation against Whipp

{¶26}  In her complaint, Willey asserted her claim for defamation against Whipp based on the allegation Whipp knowingly and intentionally made false statements to the Springfield Defendants (defined in the complaint as Springfield Township, Springfield Township Police Department, and the individual officers). Specifically, Willey alleged that "[Burk]'s friends falsely claimed to the Springfield Defendants that [Willey] had no right to be on her own property[,]" and

"falsely claimed to the Springfield Defendants that [Willey] had acted aggressively and erratically towards them and certain Springfield Township firefighters."

{¶27} A plaintiff must establish five elements to prevail in a defamation case:

(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement.

*Fisher v. Ahmed*, 2020-Ohio-1196, ¶ 32 (9th Dist.), quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 2012-Ohio-4193, ¶ 77. "There are two kinds of defamation; defamation per se occurs when material is defamatory on its face; defamation per quod occurs when material is defamatory through interpretation or innuendo." *Fisher* at ¶ 33, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 206 (9th Dist. 1996). Whether an allegedly defamatory statement is actionable as defamation is a question of law. *Leadscope* at ¶ 78, quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 6 Ohio St.3d 369, 372 (1983), *abrogated on other grounds by Welling v. Weinfeld*, 2007-Ohio-2451.

{¶28} "[E]ven where each of the essential elements of a defamation claim are established, the defendant can assert privilege to defend against liability for a defamatory statement." *Fisher* at ¶ 36. "Privileged communications may be either absolutely or qualifiedly privileged." *Id.* at ¶ 38. "A qualified or conditional privilege 'does not change the actionable quality of the words published but merely rebuts the inference of malice that is imputed in the absence of privilege and makes a showing of falsity and actual malice essential to the right of recovery.'" *Id.*, quoting *Hahn v. Kotten*, 43 Ohio St.2d 237, 244 (1975). "On the other hand, 'absolute privilege protects the publisher of a false, defamatory statement even though it is made with actual malice, in bad faith and with knowledge of its falsity.'" *Fisher* at ¶ 38, quoting *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505 (1994). "As a matter of public policy, an absolute privilege protects

statements that report a possible crime, because a privilege under such circumstances encourages the reporting of criminal activity by removing any threat of reprisal in the form of civil liability." (Internal quotations and citations omitted.) *Fisher* at ¶ 40. Whether absolute privilege applies to a statement is a question of law. *See Nice v. Akron*, 2023-Ohio-2230, ¶ 13 (9th Dist.).

{¶29} In his motion for summary judgment, Whipp argued that (1) he did not make any statements to the Springfield Defendants, (2) if had made any statements to the Springfield Defendants related to the incident, they would have been absolutely privileged, and/or (3) the alleged statements are not defamatory. In her response in opposition, Willey argued that Whipp's alternative argument in support of his motion for summary judgment—that if he had made any statement, those statements would be absolutely privileged—amounted to an admission that Whipp lied during his testimony and that he did in fact speak to police officers. Willey then asserted that "[w]hat [Whipp] said to the police could have been *per se*, or it could have been *per quod*[,]" and that "Whipp can testify [at trial] as to what he actually said . . . ." Willey asserts that "[t]he jury can then decide whether Whipp was privileged to tell the police whatever he told them . . . ."

{¶30} The trial court granted Whipp's motion for summary judgment as to the defamation claim on the basis that (1) Whipp's statements to law enforcement were absolutely privileged, and (2) any other statement made by Whipp was not defamatory.

{¶31} On appeal, Willey reasserts her arguments from her response in opposition nearly verbatim. We find no merit in Willey's arguments. First, the trial court did not grant Whipp summary judgment on the basis that he did not make any statements to the Springfield Defendants. Instead, the trial court granted him summary judgment on the basis that any such statements were absolutely privileged and any other statements were not defamatory. Willey does not raise an

argument on appeal that the trial court erred when it concluded that any other statement made by Whipp was not defamatory. Willey also does not raise an argument on appeal that the trial court erred in concluding that any statement Whipp made to law enforcement was absolutely privileged. Willey's only argument on appeal appears to be that the trial court should have let a jury decide whether the statements she alleges Whipp made were absolutely privileged and/or defamatory. However, whether a statement is absolutely privileged and/or actionable as defamation is question of law. *See Nice*, 2023-Ohio-2230, at ¶ 13 (9th Dist.); *Leadscope*, 2012-Ohio-4193, at ¶ 78.

**{¶32}** Upon review we conclude that Willey has failed to show the trial court erred when it granted Whipp summary judgment on Willey's claim for defamation against him. To the extent Willey's first assignment of error asserts otherwise, it is overruled.

## 4. Willey's Claims for Intentional Infliction of Emotional Distress against Burrell, Burks, and Whipp

**{¶33}** The trial court granted Burrell, Burks, and Whipp's separate motions for summary judgment as to Willey's separate claims for intentional infliction of emotional distress against them on the basis that (1) although profane, "no reasonable factfinder could find that the statements made by Whipp, Burrell and Burks rise to necessary level of an [intentional infliction of emotional distress] claim[,]" and (2) "no reasonable fact finder could find that the conduct of Whipp, Burrell and Burks meet the extreme and outrageous standard."

**{¶34}** On appeal, Willey asserts the trial court erred because "[t]here is an abundance of evidence as to the outrageous and extreme conduct on these Defendants' part . . . ." We disagree.

**{¶35}** In her complaint, Willey asserted a claim for intentional infliction of emotional distress against all the named defendants based upon "[t]he Defendants' conduct, all alleged herein . . . ." Willey's complaint alleged claims against Burrell for assault and defamation, against Burks

for trespass, and against Whipp for defamation. To succeed on a claim for the intentional infliction of emotional distress, a plaintiff must prove:

> (1) the defendant intended to cause emotional distress, or knew or should have known his actions would result in serious emotional distress, (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency, and can be considered completely intolerable in a civilized community, (3) the defendant's actions proximately caused psychic injury to the plaintiff, and (4) the plaintiff suffered serious mental anguish of a nature no reasonable man could be expected to endure.

*Leonhardt v. City of Akron*, 2019-Ohio-5223, ¶ 50 (9th Dist.), quoting *Jones v. White*, 1997 WL 669737, *8 (9th Dist. Oct. 15, 1997). "Conduct rises to the level of extreme and outrageous only if it goes beyond all bounds of decency and can be regarded as atrocious and intolerable in a civilized society." *Perkins v. Lavin*, 98 Ohio App.3d 378, 383 (9th Dist. 1994). As the Supreme Court has elaborated:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*Finley v. First Realty Property Mgt., Ltd.*, 2009-Ohio-6797, ¶ 35 (9th Dist.), quoting *Yeager*, 6 Ohio St.3d at 374-375.

{¶36} In addition to other arguments, Burrell, Burks, and Whipp all claimed in their separate motions for summary judgment that they were entitled to summary judgment on Willey's claims against them for intentional infliction of emotional distress because their conduct, as alleged by Willey in her complaint, was not extreme and outrageous. In her complaint, Willey asserted a single claim for intentional infliction of emotional distress against all the named defendants based

upon "[t]he Defendants' conduct, all alleged herein . . . ." Willey's complaint included a claim for trespass against Burks, a claim for assault against Burrell, and a claim for defamation against all defendants. In addition to Willey's complaint, Burrell also pointed to the witness statement of Abigail Christian and Burks' deposition to show that that the entire interaction between Willey and Burrell was "that Burrell stepped in between [Willey] and Burks and grabbed [Willey]'s arm and told [Willey] to leave, all in an attempt to prevent a physical altercation between [Willey] and Burks." In addition to Willey's complaint, Whipp pointed to Willey's deposition testimony to show the only conduct she attributed to Whipp was the statement that she had 72 hours to leave the property.

{¶37} Willey argued in her response in opposition, and asserts again on appeal, that "[t]here is an abundance of evidence as to the outrageous and extreme conduct on these Defendants' part . . . ." Willey pointed to the following conduct: "calling Willey a heartless bitch who would die alone[,]" "telling Willey that she has to vacate within 72 hours[,]" and "grabbing Willey's arms and pushing her[.]" Elsewhere in her response in opposition, Willey pointed to her own deposition testimony wherein she attributed the statements respectively to Burks, Whipp, and Burrell. Willey also pointed to Burks' deposition testimony wherein she stated she told police officers that Willey acted "aggressive and she came in yelling and screaming" during the altercation.

{¶38} Upon review, we conclude that accepting the conduct Willey attributes to Burks and Whipp as true, reasonable mind could not conclude that such conduct is extreme and outrageous. Willey argues on appeal that "[n]o one should be yelled at and taunted in that way by their daughter" and "[n]o one should have to endure their daughter's friends then piling on." However, the Supreme Court of Ohio "has emphasized that 'extreme and outrageous' is a high

standard, which is not reached with 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Silvers v. Clay Twp. Police Dept.*, 2018-Ohio-2970, ¶ 50 (2d Dist.), quoting *Yeager*, 6 Ohio St.3d at 375.

{¶39} Accepting as true that Burks called Willey a "heartless bitch who would die alone" and told police officers that Willey acted "aggressive" and "came in yelling and screaming[,]" reasonable minds could not conclude that such conduct "go beyond all bounds of decency" such that it can be considered as "utterly intolerable in a civilized society." *Yeager* at 375. Likewise, accepting as true that Whipp told Willey she had 72 hours to vacate the property, and was "piling on" to the alleged insults of Burks, reasonable minds could not conclude such conduct on the part of Whipp "go[es] beyond all bounds of decency" such that it can be considered as "utterly intolerable in a civilized society." *Id.*, quoting Restatement of the Law 2d, Torts 71, § 46(1), Comment b (1965). "There is no occasion for the law to intervene in every case where someone's feelings are hurt[,]" and "plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id.*

{¶40} Regarding the conduct Willey attributed to Burrell—that she grabbed and pushed Willey—Willey does not explain on appeal why the trial court erred in concluding no reasonable juror would find this conduct extreme and outrageous. When an appellant fails to develop an argument in support of her assignment of error, this Court will not create one for her. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 1998 WL 224934, *8 (9th Dist. May 6, 1998). "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

{¶41} To the extent Willey's first assignment of error argues the trial court erred in granting summary judgment to Burrell, Burks, and Whipp on Willey's separate claims of intentional infliction of emotional distress against them, it is overruled.

## 5. Willey's Claims for False Arrest and Malicious Prosecution against the Springfield Defendants.

{¶42} In its order, the trial court granted the Springfield Township Defendants summary judgment on Willey's false arrest and malicious prosecution claims on the basis that (1) no reasonable juror could find there was not reasonable ground for suspicion that Willey had violated all three statutes, (2) the Springfield Township employees Sergeant London, Officer Chapman, and Officer Laurenti were entitled to statutory immunity in their individual capacities pursuant to R.C. 2744.03(A)(6), and (3) Springfield Township, Sergeant London, Officer Chapman, and Officer Laurenti were entitled to statutory immunity in their official capacities pursuant to R.C. 2744.02(A)(1).

{¶43} On appeal, Willey contends the trial court erred when it granted the Springfield Defendants summary judgment on her claims for false arrest and malicious prosecution because the officers did not have probable cause to arrest her. We disagree.

### A. False Arrest and Malicious Prosecution.

{¶44} It is undisputed that Willey was arrested and charged with misconduct at an emergency, making false alarms, and disorderly conduct, and that the charges were later dismissed. In their motion for summary judgment, the Springfield Township Defendants argued they were entitled to judgment on Willey's claims for false arrest on the basis that (1) there was no evidence Officer Laurenti or Officer Doe had any involvement in the arrest or prosecution,[3] and (2) Sergeant

---

[3] We note that the Springfield Defendants also asserted there was no evidence Firefighter Bell and Chief Wincik had any involvement in the arrest or prosecution of Willey. However,

London and Officer Chapman had probable cause to arrest Willey. They argued they were entitled to summary judgment on Willey's claims for malicious prosecution on the basis that (1) there was no evidence any Springfield Township defendant instituted or continued the prosecution of Willey, and (2) the evidence showed there was probable cause to arrest Willey for misconduct at an emergency, false use or unlawful disclosure of information, and disorderly conduct. In support, the Springfield Township Defendants pointed to Willey's complaint, the deposition testimonies of Officer Chapman, Officer Laurenti, and Sergeant London, the officers' body-worn camera footage, and the deposition testimony of Willey.

{¶45} "Claims of false arrest and false imprisonment require proof of the same essential elements, and therefore, are 'indistinguishable.'" *Griesmar v. Stow*, 2025-Ohio-1993, ¶ 24 (9th Dist.), quoting *Frazier v. Clinton Cty. Sheriff's Office*, 2008-Ohio-6064, ¶ 22 (12th Dist.). "[F]alse imprisonment occurs when a person confines another intentionally '*without* lawful *privilege* and against [her] consent within a limited area for any appreciable time, however short.'" (Emphasis in original.) *Jacobson v. Akron Children's Hosp.*, 2023-Ohio-2225, ¶ 14 (9th Dist.), quoting *Feliciano v. Kreiger*, 50 Ohio St.2d 69, 71 (1977). A claim for false arrest and/or false imprisonment is proven by showing (1) the intentional detention of the person, and (2) the unlawfulness of the detention. *Griesmar* at ¶ 24. "An arrest based on probable cause is a lawful detention." *Id.* "Therefore[,] a finding of probable cause serves to defeat false arrest and false imprisonment claims." *Id.*; *Wolford v. Sanchez*, 2005-Ohio-6992, ¶ 16 (9th Dist.) ("While the plaintiff is not required to prove that the defendant had no probable cause to arrest, the existence of probable cause to arrest defeats a false arrest claim.").

---

Willey's complaint only asserts a cause of action for false arrest against the "Springfield Defendants," who Willey identified in paragraph four of the complaint as "Springfield Township, Springfield Township Police Department, and the individual officers[.]"

{¶46} In order to prevail on a claim for malicious prosecution, a plaintiff must prove: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Froehlich v. Ohio Dept. of Mental Health*, 2007-Ohio-4161, ¶ 10, quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 146 (1990). For the purposes of a malicious prosecution claim, "malice" has been defined as "'an improper purpose, or any purpose other than the legitimate interest of bringing an offender to justice.'" *Wolford* at ¶ 14, quoting *Criss v. Springfield Twp.*, 56 Ohio St.3d 82, 85 (1990). "Malice may be inferred by the absence of probable cause." *Wolford* at ¶ 14, citing *Melanowski v. Judy*, 102 Ohio St. 153 (1921), paragraph one of the syllabus.

{¶47} "If the plaintiff cannot show lack of probable cause, the claim for malicious prosecution fails as a matter of law." *Frazier v. Clinton Cty. Sheriff's Office*, 2008-Ohio-6064, ¶ 14 (12th Dist.), citing *Davis v. Peterson*, 1995 WL 134796, *3 (9th Dist. Mar. 29, 1995). "Probable cause, as it pertains to a malicious prosecution claim, is defined as 'a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" *Daly v. Certo*, 2025-Ohio-293, ¶ 127 (2d Dist.). "The determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which [s]he was charged." *Daly* at ¶ 127, quoting *Copas v. Emro Marketing, Inc.*, 1999 WL 114975, *3 (2d Dist. Mar. 5, 1999).

{¶48} A review of the criminal complaint issued to Willey after her arrest shows she was charged with misconduct at an emergency in violation of R.C. 2917.13, making false alarms in violation of R.C. 2917.32, and disorderly conduct in violation of R.C. 2917.11. The criminal

complaint does not identify which subsection of any of the statutes Willey allegedly violated.

Pursuant to R.C. 2917.13(A), no person shall knowingly

> (1) Hamper the lawful operations of any law enforcement officer, firefighter, rescuer, medical person, emergency medical services person, or other authorized person, engaged in the person's duties at the scene of a fire, accident, disaster, riot, or emergency of any kind;

> (2) Hamper the lawful activities of any emergency facility person who is engaged in the person's duties in an emergency facility;

> (3) Fail to obey the lawful order of any law enforcement officer engaged in the law enforcement officer's duties at the scene of or in connection with a fire, accident, disaster, riot, or emergency of any kind.

"A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature."  R.C. 2901.22(B).

> **{¶49}**  Pursuant to R.C. 2917.32, no person shall

> (1) Initiate or circulate a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that the report or warning is false and likely to cause public inconvenience or alarm;

> (2) Knowingly cause a false alarm of fire or other emergency to be transmitted to or within any organization, public or private, for dealing with emergencies involving a risk of physical harm to persons or property;

> (3) Report to any law enforcement agency an alleged offense or other incident within its concern, knowing that such offense did not occur;

> (4) Initiate or circulate a report or warning of an alleged or impending fire, explosion, crime, or other catastrophe, knowing that the report or warning is false and likely to impede the operation of a critical infrastructure facility.

"A person has knowledge of circumstances when the person is aware that such circumstances probably exist."  R.C. 2901.22(B).  Additionally, "[w]hen knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively

believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact." *Id.*

{¶50} Pursuant to R.C. 2917.11,

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior;

(2) Making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person;

(3) Insulting, taunting, or challenging another, under circumstances in which that conduct is likely to provoke a violent response;

(4) Hindering or preventing the movement of persons on a public street, road, highway, or right-of-way, or to, from, within, or upon public or private property, so as to interfere with the rights of others, and by any act that serves no lawful and reasonable purpose of the offender;

(5) Creating a condition that is physically offensive to persons or that presents a risk of physical harm to persons or property, by any act that serves no lawful and reasonable purpose of the offender.

(B) No person, while voluntarily intoxicated, shall do either of the following:

(1) In a public place or in the presence of two or more persons, engage in conduct likely to be offensive or to cause inconvenience, annoyance, or alarm to persons of ordinary sensibilities, which conduct the offender, if the offender were not intoxicated, should know is likely to have that effect on others;

(2) Engage in conduct or create a condition that presents a risk of physical harm to the offender or another, or to the property of another.

"A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶51} Relevant to the issue of probable cause, Sergeant London testified he arrested Willey for misuse of 9-1-1 for reporting an emergency while officers were already present on the

scene and handling the situation. Officer Chapman also testified that Willey was charged with misuse of 9-1-1 due to calling the emergency line while the officers were already on scene. Sergeant London testified Willey was arrested for disorderly conduct for "raising her voice causing an annoyance alarm at the emergency scene." He stated she was arrested for misconduct at emergency because "Firefighters were doing their job and they were leaving because of her conduct." Sergeant London and Officer Chapman each testified he did not know why the charges were dismissed.

{¶52} Sergeant London testified that on the day of the incident, he was dispatched to the scene based on a request from the fire department. Sergeant London stated he was aware there was a fire at the house prior to his arrival. He stated that fire department personnel were still on site but were in the process of leaving. Sergeant London testified that he spoke to Fire Chief Wincik when he arrived and that the Chief indicated there was a dispute between parties and they needed police assistance. Sergeant London testified that Chief Wincik identified Willey as being involved in the dispute. Sergeant London further testified that Chief Wincik indicated fire personnel were leaving the scene due to the altercation.

{¶53} Officer Laurenti testified she arrived on scene while Sergeant London was speaking to Willey and that she proceeded to take witness statements. Officer Laurenti testified she did not arrest Willey and stated she was not present when Willey was placed in handcuffs.

{¶54} Sergeant London testified he first spoke to a group of people that included the homeowner. The group indicated to him that Willey had initiated the altercation and had assaulted a firefighter by grabbing him. Burks' witness statement indicated the firefighter was helping her retrieve items from the home when Willey began yelling at the group about someone entering her home. Burks' statement indicates she began yelling at Willey in return and the two continued

yelling back and forth until Willey approached her. Burks' statement indicates that her friend and the firefighter attempted to calm Willey down at which point Willey "put hands on the firefighter." Abigail Christian's witness statement indicates Willey kept lunging at Burks and screaming at the firefighters about the electricity to her home. Her statement further indicates that Willey pushed the firefighter twice while attempting to get back to Burks and continued "screaming and cussing at all of us again."

{¶55} Sergeant London testified he also spoke to Willey. Officer Chapman testified he arrived on scene while Sergeant London was speaking with Willey and overheard some of their conversation. Both officers indicated that Willey wanted the power to be turned back on to her home. Sergeant London testified that Willey also asserted she had been verbally assaulted, but he did not recall by whom. Both Sergeant London and Officer Chapman testified that Willey began yelling at the officers after Sergeant London advised Willey that she would need to contact the fire department regarding her power. Sergeant London testified that he asked Willey to refrain from yelling and to quiet down. However, Willey continued to raise her voice and yell. A review of the body camera footage shows Willey repeatedly yelling at officers despite being asked to lower her voice.

{¶56} Sergeant London testified Willey appeared "pretty intoxicated[.]" He stated he smelled the odor of alcoholic beverage come from Willey's person and that she displayed irrational behavior, was argumentative, and had a hard time following directions. Officer Chapman also testified that he smelled an odor of alcohol.

{¶57} Sergeant London testified that Willey alleged that she was verbally assaulted by her daughter and physically assaulted by Burrell and a firefighter. Sergeant London then asked her if she needed an ambulance, to which she replied yes. Consequently, Sergeant London

requested an ambulance. Sergeant London stated an ambulance arrived to check on Willey. However, she refused treatment.

{¶58} Both Sergeant London and Officer Chapman testified that Willey called 9-1-1 and requested other officers to come to the scene while they were talking to her. A review of the officers' body camera footage shows officers had been on the scene for more than forty-five minutes and had already taken Willey's witness statement before Willey made the call. Sergeant London testified he told Willey to hang up the phone and then placed her in handcuffs and arrested her for misuse of 9-1-1 for reporting an emergency. Officer Chapman also testified that Willey was charged with misuse of 9-1-1 due to calling the emergency line while the officers were already on scene. Sergeant London testified Willey was arrested for disorderly conduct for "raising her voice causing an annoyance alarm at the emergency scene." He stated she was arrested for misconduct at emergency because "Firefighters were doing their job and they were leaving because of her conduct." Sergeant London testified he did not know when or why the charges were dismissed. Officer Chapman testified he did not know why the charges were dismissed.

{¶59} In her response in opposition to summary judgment, Willey argued the Springfield Defendants did not have probable cause to arrest her. In support of her arguments, Willey pointed to her own affidavit and deposition testimony, and the deposition testimony of Fire Chief Wincik. First, Willey asserted there was no probable cause to arrest her for misconduct at an emergency by interfering with firefighting efforts because she was never ordered to leave and there was no longer an emergency. Willey points to the deposition transcript of Chief Wincik, wherein he stated that when the fire department left the scene "Our time there would have concluded I would imagine. Hot spots had been extinguished." She also pointed to her own affidavit, wherein she averred

Chief Wincik "ordered his officers onto their truck when he saw Bell grab Willey – stating, 'You just don't do that.'"

{¶60} Next, Willey argued there was no probable cause to arrest her for misuse of 9-1-1 because (1) she had not been instructed to not call 9-1-1, (2) she felt she had been assaulted, (3) could not trust the police officers in front of her, and (4) merely calling 9-1-1 on police officers is not against the law. Regarding the misuse of 9-1-1 charge, Willey averred in her affidavit that she called 9-1-1 because she asked police officers to leave and "[t]hey refused. They stayed and stared at Willey. That is why Willey called 911." She averred she "called 911 to obtain emergency aid due the manner in which she was being treated by Township police personnel. [She] sought a supervisor. [She] wanted assistance, while she was being threatened by officers."

{¶61} Finally, Willey argued there was no probable cause to arrest her for disorderly conduct because there was no evidence she had been engaging in fighting or in threatening harm to anyone and she was not intoxicated.

{¶62} Upon review, we conclude that the Springfield Defendants met their burden to show there were no genuine issues of material fact regarding whether they had probable cause to arrest Willey for misconduct at an emergency, making false alarms, and disorderly conduct. Willey's arguments in her response in opposition, which she reasserts on appeal, do not consider whether officers had probable cause to arrest her and instead focused on whether or not her conduct was sufficient to prove she actually committed the crimes of misconduct at an emergency, misuse of 9-1-1, and disorderly conduct and not whether the officers had probable cause to arrest her. However, "[t]he determinative issue is not whether a particular crime was actually committed, but whether there was a reasonable ground of suspicion, supported by circumstances sufficiently

strong in themselves to warrant a cautious man in the belief that the person accused was guilty of the offense with which [s]he was charged." *Daly*, 2025-Ohio-293, at ¶ 127 (2d Dist.).

**{¶63}** Willey failed to point to any evidence suggesting the police officers did not have probable cause to arrest her for misconduct at an emergency, making false alarms, and disorderly conduct. Willey did not dispute that several witnesses informed officers that Willey was yelling and screaming at firefighters, had "put hands on the firefighter," and had pushed him twice while he was on duty at the scene of a fire. Sergeant London testified that Chief Wincik had informed him the fire department was leaving the scene due to an altercation which involved Willey. Both Sergeant London and Officer Chapman testified Willey consistently yelled at them despite being asked to lower her voice and remain calm. Willey did not point to any evidence to dispute this testimony. Finally, Willey did not testify that she called 9-1-1 to report an emergency. Rather, she testified she called 9-1-1 for the purpose of speaking to the officer's supervisor despite having been informed that a supervisor was not available.

**{¶64}** Therefore, Willey has not shown the trial court erred in granting summary judgment to the Springfield Defendants on her claims for false arrest and malicious prosecution on the basis there was no genuine issue of material fact regarding whether officers had probable cause to arrest her. To the extent Willey's first assignment of error asserts otherwise, it is overruled.

**B. Statutory Immunity.**

**{¶65}** On appeal, Willey asserts the trial court erred when it determined (1) Springfield Township was immune from the intentional torts of its employees, and (2) Sergeant London and Officer Chapman were entitled to statutory immunity pursuant to R.C. 2744.03(A)(6) because they

acted maliciously[4]. However, Willey fails to develop an argument in support of her assertion that the trial court erred in determining Springfield Township was statutorily immune from the intentional torts of its employees. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934 at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.") Although Willey does raise an argument concerning Sergeant London's and Officer Chapman's entitlement to statutory immunity, to the extent that issue concerns Willey's claims for false arrest and malicious prosecution, that issue has been rendered moot by our ruling above. *See* App.R. 12(A)(1)(c).

**6. Willey's Claim for Assault against Firefighter Bell.**

{¶66} On appeal, Willey asserts the trial court erred when it entered summary judgment in favor of the Springfield Defendants on her claim for assault against Firefighter Bell. For the reasons that follow, we reject Willey's argument.

{¶67} The trial court granted the Springfield Defendants' motion for summary judgment concerning her claim for assault against Firefighter Bell on the basis that he was entitled to immunity pursuant to R.C. 2744.03(A)(6). However, Willey does not raise an argument on appeal related to the trial court's entry of summary judgment on this issue. When an appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him. *See* App.R. 16(A)(7); *Cardone* at *8. "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

---

[4] Willey does not assert on appeal and the trial court erred when it concluded Springfield Township employees were entitled to statutory immunity on all of Willey's claims against them in their official capacities. Willey also does not assert on appeal that the trial court erred in determining Officer Laurenti, Officer Jane Doe, Firefighter Bell, or Chief Wincik were entitled to statutory immunity on all of Willey's claims against them in their individual capacities.

{¶68} Willey has not shown the trial court erred in granting the Springfield Defendants summary judgment on her claim for assault against Firefighter Bell. To the extent her first assignment of error argues otherwise, it is overruled.

## 7. Willey's Claim for Intentional Infliction of Emotional Distress Against the Springfield Defendants.

{¶69} In its order granting summary judgment, the trial court determined Springfield Township and its employees, in their official capacity, were entitled to statutory immunity on all Willey's claims against them pursuant to R.C. 2744.02(A)(1). The trial court also determined that the individual employees were entitled to statutory immunity in their individual capacities pursuant to R.C. 2744.02(A)(6).

{¶70} On appeal, Willey asserts the trial court erred when it determined (1) Springfield Township was immune from the intentional torts of its employees, and (2) Sergeant London and Officer Chapman were entitled to statutory immunity pursuant to R.C. 2744.03(A)(6) because they acted maliciously.[5] As an initial matter, we note that Willey fails to develop an argument in support of her assertion that the trial court erred in determining Springfield Township was statutorily immune from the intentional torts of its employees. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934 at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out."). We decline to do so for her. *See id.*

{¶71} We now turn to Willey's argument that Sergeant London and Officer Chapman, in their individual capacities, were not entitled to statutory immunity on all Willey's claims against

---

[5] Willey does not assert on appeal and the trial court erred when it concluded Springfield Township employees were entitled to statutory immunity on all of Willey's claims against them in their official capacities. Willey also does not assert on appeal that the trial court erred in determining Officer Laurenti, Officer Jane Doe, Firefighter Bell, or Chief Wincik were entitled to statutory immunity on all of Willey's claims against them in their individual capacities.

them.  "The Political Subdivision Tort Liability Act, as codified in R.C. Chapter 2744, sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability." *Doe v. Greenville City Schools*, 2022-Ohio-4618, ¶ 9, quoting *Cater v. Cleveland*, 83 Ohio St.3d 24, 28 (1998).  There is no dispute that Springfield Township is a political subdivision.  *See* R.C. 2744.01(F).  Relevant here, R.C. 2744.02(A)(1) provides that unless an exception applies, "a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function."  The provision of a police department is a "governmental function" for the purpose of the Act.  R.C. 2744.01(C)(2).

{¶72}  "When it has been determined that a party generally qualifies for immunity due to its status as a political subdivision, the second tier of the analysis is to determine whether one of the exceptions to immunity set forth in R.C. 2744.02(B) is applicable." *Thomas v. Lorain Metro. Hous. Auth.*, 2018-Ohio-2997, ¶ 13 (9th Dist.).  "Under circumstances where an exception to immunity applies, the third tier of the analysis involves a determination of whether immunity may be restored under R.C. 2744.03(A)." *Id.*

{¶73}  However, with respect to employees, "courts must look directly to [R.C.] 2744.03(A)(6) to determine whether immunity applies." *Posan v. Boyer*, 2023-Ohio-2471, ¶ 6 (9th Dist.).  Pursuant to R.C. 2744.03(A)(6), an "employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. . . . .

**{¶74}** In their motion for summary judgment the Springfield Defendants argued the individual Springfield Township Defendants were entitled to statutory immunity on Willey's claims against them because there was no evidence they were acting outside their official duties and none of the exceptions applied. They asserted that based on the evidence in the record, no reasonable mind could conclude the officers were acting with malicious purpose because Willey was arrested upon the existence of probable cause as set forth in their arguments related to Willey's claims of false arrest and malicious prosecution.

**{¶75}** In her response in opposition, Willey argued that Sergeant London and Officer Chapman were not entitled to immunity because they acted maliciously and arrested her without probable cause. Willey pointed to the deposition testimony of Chief Wincik, asserting that the fire chief testified he witnessed nothing unusual. Willey's arguments on appeal are a near verbatim recitation of her arguments in her response in opposition.

**{¶76}** The exceptions to immunity in R.C. 2744.03 must be narrowly construed. *Ehrlich v. Medina Cty. Aud.*, 2019-Ohio-1149, ¶ 17 (9th Dist.). This Court has also stated that

> conduct is within the scope of employment if it is initiated, in part, to further or promote the master's business. For an act to fall within the scope of employment, it must be calculated to facilitate or promote the business for which the employee or agent was employed. In general, if an act is committed within the scope of employment, it will be authorized, either expressly or impliedly, by the employer. It is only where the acts of state employees are motivated by actual malice or other situations giving rise to punitive damages that their conduct may be outside the scope of their state employment.

*Id.*, quoting *Thomas v. Bauschlinger*, 2015-Ohio-281, ¶ 25 (9th Dist.).

> The Supreme Court of Ohio has long recognized that it is rarely possible to prove actual malice otherwise than by conduct and surrounding circumstances. One who has committed an act would scarcely admit that he was malicious about it, and so, necessarily, malice can be inferred from conduct.

*Ehrlich* at ¶ 17, quoting *Coterel v. Reed*, 2016-Ohio-7411, ¶ 20 (2d Dist.). "Malice can be inferred from proof of lack of probable cause." *Wolford*, 2005-Ohio-6992, at ¶ 35 (9th Dist.). "'It follows that the opposite is also true.'" *Id.*, quoting *Lorenzo v. Akron*, 2002-Ohio-7318, ¶ 17 (9th Dist.).

**{¶77}** This Court previously determined that Willey did not show officers arrested her without probable cause. *See False Arrest/Malicious Prosecution discussion*, *supra*. "[T]herefore, there is no lack of probable cause from which the element of malice may be inferred." *Wolford* at ¶ 35.

**{¶78}** Willey has not shown the trial court erred in granting summary judgment to the Springfield Defendants on the basis that the Springfield Township employees were entitled to immunity pursuant to R.C. 2744.03(A)(6) and Springfield Township was statutorily immune from the intentional torts of its employees. To the extent her first assignment of error argues otherwise, it is overruled.

**8. Willey's Claims for Civil Rights Violations pursuant to 42 U.S.C. 1983 against the Springfield Defendants.**

**{¶79}** On appeal, Willey asserts the trial court erred when it granted the Springfield Township Defendants summary judgment on Willey's claims for civil rights violations brought pursuant to 42 U.S.C. 1983. For the following reasons, we reject her argument.

**1. Willey's 42 U.S.C. 1983 claim against Springfield Township**

**{¶80}** In its judgment entry, the trial court granted Springfield Township summary judgment as a matter of law because Willey failed to present any evidence that she was deprived of her rights pursuant to an official municipal policy or a municipal custom. Willey does not assert on appeal that the trial court erred in this regard. Instead, Willey merely states, "Springfield Township is responsible for a decision officially made or adopted by the Township which deprived

Willey of a constitutional right." However, Willey fails to develop any argument to suggest the trial court erred in granting summary judgment to Springfield Township on her 42 U.S.C. 1983 claim against it. This Court will not create an argument for her. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934 at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.").

**2. Willey's 42 U.S.C. 1983 claim against the Springfield Township employees**

{¶81} We now turn to Willey's contention that the trial court erred when it granted the Springfield Township employees summary judgment on the basis they were entitled to qualified immunity on Willey's 42 U.S.C. 1983 claims against them.

{¶82} "Section 1983, Title 42, U.S. Code provides a remedy to persons whose federal rights have been violated by government officials. It is limited, however, to deprivations of federal constitutional or statutory rights." *Leonhardt*, 2019-Ohio-5223, at ¶ 31 (9th Dist.) quoting *Trubiani v. Graziani*, 2000 WL 14043, *4 (9th Dist. Dec. 29, 1999). A plaintiff must establish "(1) that the conduct complained of was committed by a person acting under the color of law, and (2) that the conduct deprived him or her of a federally protected right." *Leonhardt* at ¶ 31, quoting *Trubiani* at *4.

{¶83} In their motion for summary judgment, the Springfield Township Defendants argued that the individual Springfield Township employees were entitled to qualified immunity because Willey failed to present any evidence of a constitutional violation by any individual defendant. In response, Willey asserted the Springfield Township employees were not entitled to qualified immunity because (1) there was no probable cause to justify Willey's arrest and prosecution, and (2) officers denied Willey due process because no one informed her of her *Miranda* rights. In granting the Springfield Township Defendants' motion for summary judgment,

the trial court concluded the evidence of record showed officers had probable cause to arrest Willey and the Springfield Township Defendant's failure to read her *Miranda* warnings did not support a claim under 42 U.S.C. 1983. *See Vega v. Tekoh*, 597 U.S. 134, 152 (2022) (declining to expand *Miranda* to confer a right to sue under 42 U.S.C. 1983).

{¶84} Willey reasserts on appeal that the individual Springfield Township employees were not entitled to qualified immunity because (1) the evidence shows officers had no probable cause to arrest her, and (2) no one informed her of her *Miranda* rights when she was arrested. We reject Willey's arguments. First, this Court has already addressed the issue of probable cause in this case. *See False Arrest/Malicious Prosecution discussion*, *supra*. Second, Willey merely asserts that officers failed to inform her of her *Miranda* rights. She does not develop an argument on appeal challenging the trial court's conclusion that such a failure does not support a claim under 42 U.S.C. 1982. We will not do so for her. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934 at *8 ("If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out.").

{¶85} Willey has not shown that the trial court erred when it granted the Springfield Defendants summary judgment on her 42 U.S.C. 1983 claims. To the extent her first assignment of error asserts otherwise, it is overruled.

## ASSIGNMENT OF ERROR II

## THE TRIAL COURT ERRED IN ITS PARTIAL GRANT OF DISMISSAL.

{¶86} In her second assignment of error, Willey asserts the trial court erred when it granted the joint motion to dismiss her intentional infliction of emotional distress claims against Abigail Christian and David Christian. Willey does not assert that the trial court erred in dismissing Willey's claims for defamation against Abigail Christian and David Christian.

Although Willey claims the trial court erred because her complaint "clearly and unambiguously states a cause of action for intentional infliction of emotional distress against all Defendants," Willey does not develop an argument in support of her assignment of error.

**{¶87}** When an appellant fails to develop an argument in support of her assignment of error, this Court will not create one for her. *See* App.R. 16(A)(7); *Cardone*, 1998 WL 224934 at *8. "If an argument exists that can support [an] assignment of error, it is not this [C]ourt's duty to root it out." *Cardone* at *8.

**{¶88}** Upon review we conclude that Willey has failed to show the trial court erred when it dismissed Willey's claims for intentional infliction of emotional distress against Abigail Christian and David Christian. Willey's second assignment of error is overruled.

### III.

**{¶89}** Willey's first and second assignments of error are overruled.

Judgement affirmed.

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
JILL FLAGG LANZINGER
FOR THE COURT

CARR, J.
CONCURS IN JUDGMENT ONLY.

SUTTON, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

DIANE R. GUZZO, Attorney at Law, for Appellee.

REBECCA J. SREMACK, Attorney at Law, for Appellees.

GREGORY BECK, ANDREA K. ZIARKO, and BRITTANY A. BOWLAND, Attorneys at Law, for Appellees.

PAUL J. SCHUMAKER and SHAKA S.J. SADLER, Attorneys at Law, for Appellee.

HANK F. MEYER, Attorney at Law, for Appellee.